UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRAVIS OLIVER, #458664,

    Plaintiff,

v.

DR. DAVID MARCOWITZ,

    Defendant.

Case No. 3:20-cv-00735-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on a Motion for Summary Judgment. (Doc. 74). The Defendant filed his motion on August 31, 2023. Finding that Dr. Marcowitz's treatment of Oliver was not objectively unreasonable, the Court **GRANTS** the Motion.

**I.  INTRODUCTION**

The Defendant moved for summary judgment and filed a Rule 56 Notice on August 31, 2023. (Doc. 76). *See* Fed. R. Civ. Pro. 56. The Plaintiff's response was due no later than October 2, 2023. The Plaintiff failed to respond by the deadline. On March 14, 2024, the Defendant moved the Court to issue an order to show cause as to why the matter should not be dismissed for lack of prosecution. (Doc. 77). Accordingly, on March 18, 2024, the Court issued an order to show cause. (Doc. 78). Per the order to show cause, the Plaintiff was ordered to respond to the order to show cause or respond to the motion for summary judgment within forty-five days. (*Id*.).

On March 25, 2024, the Plaintiff filed a response to the order to show cause asking to dismiss the suit. (Doc. 79). However, the filing was not signed by Defense counsel. The filing appeared to be a Notice of Dismissal under Fed. R. Civ. Pro. 41(a)(1)(A)(i). A Notice of Dismissal permits a Plaintiff to unilaterally dismiss an action without leave of court so long as an

1

opposing party has not served an answer or moved for summary judgment. However, the Defendant had already served an answer and moved for summary judgment. Therefore, the Plaintiff could not unilaterally dismiss the action.

While the Plaintiff could not unilaterally dismiss the action, a plaintiff may still move for dismissal by court order under Fed. R. Civ. Pro. 41(a)(2). Thus, the Court construed the Plaintiff's filing as a motion to dismiss. Pursuant to Local Rule 7.1(b)(1)(A), the Court ordered the Defendant to respond to the Plaintiff's motion to dismiss within thirty days. (Doc. 80).

On April 26, 2024, the Defendant responded to the Order. (Doc. 81). In that response, the Defendant stated that they have "undertaken considerable effort and expense throughout the course of this litigation." (Doc. 81). Additionally, as the motion to dismiss did not indicate whether dismissal would be with or without prejudice, the default is dismissal without prejudice. The Defendant objected to dismissal without prejudice, stating that they would "be prejudiced if [the] Plaintiff is allowed to re-file the case after failing to respond to [the] Defendant's motion for summary judgment." (*Id*.). The Defendant requested that the Court rule on their motion for summary judgment.

## II.    BACKGROUND

Travis Oliver was detained at St. Clair County Jail in Belleville, Illinois. Dr. Marcowitz would visit the Jail on a weekly basis. On April 24, 2020, Oliver wrote a Health Services Request (HSR) claiming he had two exposed nerves in his teeth which were causing dental pain. Four days after the HSR, Marcowitz saw Oliver. Marcowitz observed neither exposed nerves nor gum swelling. He did notice that Oliver had severe decay in two of his teeth and prescribed ibuprofen to help with the pain.

However, despite the pain medication, the pain persisted. Oliver continued to submit

HSRs on May 29 and May 31, 2020. In response to these requests Marcowitz saw Oliver again on June 9. Unlike Oliver's first appointment, Marcowitz observed swelling and tenderness in the teeth. In the intervening time, it appeared that the decay had moved to Oliver's gum line. Marcowitz prescribed a 10-day course of antibiotics and continued with ibuprofen. Marcowitz saw Oliver a third time on July 14 after his tooth pain failed to subside. Oliver expressed concern about side effects of ibuprofen. Consequently, Marcowitz prescribed Tylenol instead. The same day Oliver saw Marcowitz, he filled out a detainee complaint form stating that he needed to see a dentist and, despite the pain medication, that he was still experiencing pain.

Marcowitz saw Oliver a fourth time on July 28. Oliver told Marcowitz that his tooth pain had been on-and-off for about a year. Accordingly, Marcowitz prescribed more antibiotics, Tylenol, and planned a dentist appointment for Oliver. Before Oliver could be scheduled for an appointment, he filled out a grievance form on August 6 complaining of sharp pains in his teeth that interfered with his ability to perform daily life functions. Accordingly on August 10, Oliver was placed on a dental list. However, due to the COVID-19 pandemic, the only dentist office that would see prisoners was closed.

In early September, Marcowitz saw Oliver for a fifth time. Oliver claimed that he had seen a dentist previously and that the dentist had recommended a root canal. How he saw a dentist is unknown. When the dentist office reopened in September, Oliver was finally able to see a dentist on September 17. The dentist diagnosed Oliver with several conditions and, on September 26, performed root canals for the infected teeth. At no time did Marcowitz observe an abscess or severe condition that required urgent treatment, neither did Oliver request emergency treatment. Oliver sued and, in his amended complaint, charged that Marcowitz and others violated his civil rights under the Eighth and Fourteenth Amendments.

### III.     LEGAL STANDARD

#### A. Fourteenth Amendment

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Fourteenth Amendment's protections also extend to conditions of confinement for pretrial detainees. *Hardeman v. Curran*, 933 F.3d 816, 821-22 (7th Cir. 2019).

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. IIX. While the Eighth Amendment "forbids cruel and unusual punishments; it does not require the most intelligent, progressive, humane, or efficacious prison administration.". *Lee v. Young*, (7th Cir. June 24, 2008) (quoting *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995)).

However, the Eighth Amendment no longer applies to pretrial detainees because pretrial detainees have not been convicted and, therefore, cannot be "punished." *See Bernard v. Scott*, 501 F. Supp. 3d 611 (N.D. Ill. 2020) (citing *Miranda v. Cty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018)). Thus, pretrial detainees must bring their claims under the Fourteenth Amendment alone. *See Miranda v. Cty. of Lake*, 900 F.3d at 350 (citing *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017)). Specifically, medical claims under the Fourteenth Amendment need only show objective unreasonableness of medical care, not deliberate indifference. *McCann v. Ogle Cty.*, 909 F.3d 881, 884 (7th Cir. 2018).

To prove objective unreasonableness in their medical claims, a plaintiff pretrial detainee must show that (i) the defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of the plaintiff's case (hereinafter "scienter requirement") and (ii) the defendants' actions were not objectively reasonable (hereinafter "unreasonableness requirement"). *Pittman v. Cty. of Madison*, 970 F.3d 823, 827 (7th Cir. 2020).

Courts cannot apply an objective reasonable analysis "mechanically." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "Rather, objective reasonableness turns on the facts and circumstances of each particular case." *Id.* (internal quotations and citations omitted). A court evaluates objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not . . . [based on] hindsight." *Id.*

### B. § 1983 Liability

If a pretrial detainee plaintiff believes their rights have been violated under the Fourteenth Amendment, they may bring an action under 42 U.S.C. § 1983. When suing under 42 U.S.C. § 1983, a pretrial detainee plaintiff may sue an entity or person in their individual or official capacity.

As § 1983 does not contemplate respondeat superior liability, *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002), a plaintiff must show that a person being sued in their individual capacity, was "personal[ly] involve[d] in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). In other words, a plaintiff pretrial detainee must show that a defendant's personal actions satisfy the scienter and unreasonableness requirements of the Fourteenth Amendment analysis.

### C. Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted). *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" (quoting *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc))).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways: it may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P.

56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757 (7th Cir. 2021) ("[N]o matter how tempting it might be on summary judgment to be distracted by the sparkle of seemingly compelling facts, [the Court's] assigned task is to take the facts in the light most favorable to the non-moving party.").

To survive summary judgment, a plaintiff asserting an objective unreasonableness claim is required to "provide evidence from which a reasonable factfinder could conclude that [the defendants] responded in an 'objectively unreasonable' way to unconstitutional conditions of confinement or to a serious medical need." *Wood v. Milwaukee Cnty.*, 2023 U.S. App. LEXIS 21871, *4 (7th Cir. 2023).

When the nonmoving party has failed to respond, to a summary judgment motion, a court cannot grant summary judgment to the defendant as a sanction. *Tobey v. Extel/JWP*, *Inc.*, 985

F.2d 330, 332 (7th Cir. 1993). Rather, a court accepts all reasonable facts from the moving party as undisputed and determines whether the moving party is entitled to summary judgment. *Id*.

### IV. ANALYSIS

Oliver alleges that Dr. Marcowitz's actions and inaction amounted to a constitutional violation—either under § 1983, the Fourteenth Amendment, or the Eighth Amendment. As a pretrial detainee, the Eighth Amendment does not apply so the only proper claims Oliver can bring are under the Fourteenth Amendment.

Oliver first complained of dental issues on April 24, 2020, and his dental issues were resolved by September 26, 2020, Oliver believes the four-month delay in treatment and Marcowitz's inability to resolve Oliver's underlying dental issues was objectively unreasonable. Therefore, the Court will analyze whether Marcowitz acted at least recklessly when he considered the consequences of the delay in handling Oliver's case *and* whether Marcowitz's actions and inaction were not objectively reasonable. If the Court determines that there is no genuine disputes of material fact, that Marcowitz does not satisfy both the scienter and unreasonableness requirements, and that no reasonable jury could find otherwise; the Court will grant summary judgment in favor of Marcowitz. As Oliver has not responded to the Motion for Summary Judgment and he was adequately served with a Rule 56 notice, the Court accepts all the facts as stated by Dr. Marcowitz as undisputed.

Oliver first alerted Dr. Marcowitz to the pain in his teeth in April of 2020, and he was seen by Marcowitz shortly thereafter. Marcowitz performed an initial evaluation that indicated no exposed roots or swollen gums. Marcowitz noticed decay in two of Oliver's teeth, but prescribed pain medication to deal with the dental pain. When teeth are decayed, they are more sensitive to the elements and individuals may have toothaches or pains that do not require

8

immediate attention from a dentist. However, there are some dental conditions that require medical intervention—such as abscesses or infections. Marcowitz did not observe any abscesses or serious problems that would require emergency medical care nor did Oliver request emergency medical care.

After treatment with pain medication was unsuccessful and Oliver continued to complain, Marcowitz saw him a second time. In contrast to the first time Marcowitz saw Oliver, Marcowitz observed that Oliver had swollen gums. Marcowitz took immediate action and prescribed antibiotics in addition to the pain killers. It is unclear why Marcowitz did not schedule Oliver for a dentist appointment at this follow up visit. However, it is reasonable to infer that Marcowitz, as a jail doctor, was aware that there was only one dentist in the area that would agree to see prisoners and that the dentist office had been closed due to the COVID-19 pandemic.

Until the dentist office reopened in September, Marcowitz saw Oliver five times. Each time Marcowitz saw Oliver, he evaluated him, prescribed him pain medication in response to his concerns, switched pain medication in response to Oliver's personal concerns about side effects, and—when Marcowitz did observe signs of infection—prescribed antibiotics.

While Marcowitz did not resolve the underlying cause of Oliver's pain, only a root canal was successful in resolving it. Marcowitz was not a dentist, he is not a dental supervisor, he had no specialized equipment to perform a root canal, nor did he have the training to perform a root canal. Therefore, Marcowitz was unable to resolve the underlying cause of Oliver's pain. Marcowitz could only attempt to resolve the symptoms of Oliver's dental issues; which Marcowitz did by prescribing pain medication and antibiotics.

Though Oliver appears to believe that he should have seen a dentist earlier than September, even if Marcowitz placed Oliver on a dentist list sooner, the only available dentist

office was closed until September. Marcowitz was not authorized to search for another dentist on the jail's behalf. Oliver was seen the same month the dentist office reopened. Considering the dentist only saw prisoners on a weekly basis, Oliver was seen in the fourth week of September. Thus, even if there was some delay in placing Oliver on the dentist list, it appears that Oliver was among the first in the jail to receive dental care. Ultimately, Marcowitz placing Oliver on the dentist list sooner would have changed nothing.

Overall, Marcowitz saw Oliver five times between April and September—when Marcowitz only visits the jail on a weekly basis. Marcowitz opted for pain management, even when no direct issue presented itself. When Marcowitz saw signs of infection, he immediately treated Oliver with antibiotics. Marcowitz saw no reason for emergency medical intervention and Oliver never requested it. When Oliver expressed concerns over side effects from pain medication, Marcowitz adjusted his treatment plan to accommodate Oliver. Shortly after the dentist office reopened, Oliver was one of the first prisoners to be seen by the dentist.

The Fourteenth Amendment provides a floor for medical treatment in jails; Marcowitz's treatment of Oliver was well above that floor. Far from showing an at least reckless disregard to the consequences his actions would have on Oliver, Dr. Marcowitz showed a great deal of attention and responsiveness to Oliver's condition. Marcowitz could not resolve the underlying condition because he was incapable of resolving Oliver's condition. With no dentist available and Marcowitz not being authorized to search for an alternative dentist; the Court questions what more Marcowitz could have done to treat Oliver. Therefore, the Court finds that no reasonable jury could find that Marcowitz's treatment of Oliver showed a deliberate, knowing, or reckless disregard for the consequences his treatment would have on Oliver.

Turning to whether Marcowitz's treatment of Oliver and the delay in treatment was

objectively reasonable, the answer is the same. The Court sees no other path Marcowitz could have taken to resolving the issue given Marcowitz's training, experience, and lack of alternatives. For these reasons and all the reasons detailed above, the Court finds that Marcowitz's behavior was objectively reasonable and that no reasonable jury could find that Marcowitz's treatment was objectively unreasonable.

### V.     CONCLUSION

Finding that there are no genuine disputes of material fact, and that no reasonable juror could find that Dr. Marcowitz showed an at least reckless disregard for the consequences his actions would have on Oliver, or that Dr. Marcowitz's treatment of Oliver was objectively unreasonable; the Court **GRANTS** the Defendant's motion for summary judgment, (Doc. 74), and **DIRECTS** the Clerk of Court to enter judgment in favor of Dr. Marcowitz accordingly.

**IT IS SO ORDERED.**
**DATED:  May 8, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**